

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-5-1999

# American Disabled v. US Dept Housing Dev

Precedential or Non-Precedential:

Docket 98-1308

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

## Recommended Citation

"American Disabled v. US Dept Housing Dev" (1999). *1999 Decisions.* Paper 57.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/57

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed March 5, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-1308

AMERICAN DISABLED FOR ATTENDANT PROGRAMS
TODAY; DISABILITY RIGHTS ACTION COALITION FOR
HOUSING; PENNSYLVANIA COALITION OF CITIZENS
WITH DISABILITIES; CONCRETE CHANGE; DISABLED IN
ACTION OF PENNSYLVANIA; PENNSYLVANIA COUNCIL
INDEPENDENT LIVING; NATIONAL FEDERATION OF THE
BLIND PENNSYLVANIA; AFRICAN-AMERICANS WITH
DISABILITIES; AMERICAN DISABLED FOR ATTENDANT
PROGRAMS TODAY OF PENNSYLVANIA; CHICAGO
AMERICAN FOR DISABLED FOR ATTENDANT PROGRAMS
TODAY; PROGRESS CENTER; THREE RIVERS CENTER
OF INDEPENDENT LIVING; NATIONAL COUNSEL ON
INDEPENDENT LIVING,
        Appellants

v.

UNITED STATES DEPARTMENT OF HOUSING AND
URBAN DEVELOPMENT

APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

(D.C. No. 96-cv-5881)
District Judge: Honorable Thomas N. O'Neill, Jr.

ARGUED JANUARY 13, 1999

BEFORE: NYGAARD, ALITO, and LEWIS, Circuit Judges.

(Filed March 5, 1999)

Stephen F. Gold (Argued)
125 South 9th Street
Suite 700
Philadelphia, PA 19107

Attorney for Appellants

Deborah R. Kant (Argued)
Marleigh D. Dover
United States Department of Justice
Civil Division, Appellate Staff
10th and Pennsylvania Avenue, NW
Washington DC 20530-0001

Attorneys for Appellee

OPINION OF THE COURT

NYGAARD, Circuit Judge.

Several organizations that represent and advocate for disabled individuals, sued under the Administrative Procedure Act alleging that the United States Department of Housing and Urban Development has abdicated its duty under the Fair Housing Act Amendments ("FHAA") and violated its own regulations under the Rehabilitation Act. ADAPT1 alleges that HUD has not fulfilled its statutory duty to ensure that multi-family housing is accessible and adaptable to persons with disabilities. ADAPT also claims that HUD fails to conduct adequate compliance reviews of recipients of federal aid, fails to conduct prompt investigations, and fails to take enforcement action when non-compliance is discovered. The District Court dismissed the claim under Rule 12(b)(6) for failure to state a claim upon which relief may be granted, finding that review was barred by sections 701 and 704 of the APA.2 We will affirm.

_____

1. Although there are several parties to the appeal, for ease of reference,
when referring to the Appellants, we will refer only to the first party,
American Disabled for Attendant Programs Today ("ADAPT").
2. We exercise plenary review of the District Court's grant of the 12(b)(6)
motion for failure to state a claim upon which relief may be granted. See
Ditri v. Coldwell Banker Residential Affiliates, Inc., 954 F. 2d 869, 871
(3d Cir. 1992).

2

I.

Recognizing the need for accessible housing for people with physical disabilities, Congress enacted legislation that attempts to ensure that accessible housing is available to them. HUD has been charged with the duty to ensure that such housing is available. In June 1988, HUD issued specific regulations, implemented under Section 504 of the Rehabilitation Act, requiring that multi-family housing, newly constructed or substantially altered with the help of federal funding, must accommodate persons with physical disabilities. These regulations require that the building, common areas, and a minimum number of the housing units be accessible to people with physical disabilities.

Congress passed the Fair Housing Act ("FHA") in 1968 to prevent housing discrimination. In 1988, it added the FHAA to include people with physical disabilities. The FHAA contains general design requirements for all multi-family housing with four or more units constructed after March 13, 1991, regardless of whether the housing is federally funded. In addition to the requirement that all buildings and common areas be accessible, it also mandates that all dwelling units (as opposed to a minimum percentage under section 504) be accessible if they are on "accessible routes" (i.e., on floors accessible via building entrances or elevator). See 42 U.S.C. S 3604(f)(3)(C). The FHAA therefore attempts to make multi-family housing generally accessible to individuals with disabilities with a minimum impact on the design of the housing.

In its complaint, ADAPT alleges that HUD has received complaints of nationwide non-compliance with the accessibility requirements of its Section 504 regulations, including a 1994 complaint by advocates for the disabled in response to which HUD officials allegedly acknowledged widespread compliance problems. ADAPT alleges that, despite these complaints, HUD has failed to (1) collect data on whether disabled persons benefit from its funding; (2) monitor grants before or after funds are spent to determine whether they are used to create accessible housing; (3) conduct prompt investigations of possible noncompliance; or (4) take enforcement action upon notice of noncompliance. ADAPT asserts that this inaction amounts

3

to an abdication by HUD of its duty to enforce its own Section 504 regulations. ADAPT also claims that this inaction is in violation of the agency's duty under the FHAA to "administer the programs and activities relating to housing and urban development in a manner affirmatively to further the policies" of the Act. 42 U.S.C. S 3608(e)(5).

ADAPT sought review under the APA, 5 U.S.C. SS 701- 710. The relief sought by ADAPT includes a declaration that HUD is violating both Section 504 and the FHAA, and an injunction forcing HUD to "(1) administer its housing and urban development programs and activities so as affirmatively to further the Fair Housing Act's policy of promoting integration of people with physical disabilities into the community through the creation of accessible housing" and "(2) assure that recipients of HUD funding comply with Section 504's housing accessibility requirements."

The District Court held that the APA prevented judicial review of the type ADAPT was requesting. The court concluded that ADAPT had not rebutted the presumption that HUD's actions were unreviewable under section 701 of the APA. In addition, the court found that ADAPT could not demonstrate that it was appealing from a final agency action for which there is no other adequate remedy in court, as required by section 704 of the APA. Finally, the court ruled that ADAPT had failed to properly plead its argument that HUD discriminated directly against disabled individuals. The District Court dismissed these direct claims, but granted ADAPT leave to amend their complaint. ADAPT instead appealed.

II.

The APA establishes a framework that permits courts to review agency actions. It waives federal sovereign immunity in certain circumstances to allow equitable relief from agency action or inaction. See 5 U.S.C. S 702. If review is allowed, a court may "compel agency action unlawfully withheld or unreasonably delayed" or "hold unlawful and set aside agency action" that is determined to be "arbitrary, capricious, an abuse of discretion," or "short of statutory

right." Id. S 706. The APA allows judicial review of agency actions unless the "(1) statute[ ] preclude[s] judicial review; or (2) [the] agency action is committed to agency discretion by law." 5 U.S.C. S 701(a). Whether an agency action falls under prong (2) and is "committed to agency discretion by law" is determined by a "construction of the substantive statute involved to determine whether Congress intended to preclude judicial review of certain decisions." Heckler v. Chaney, 470 U.S. 821, 828–29, 105 S. Ct. 1649, 1654 (1985).

Agency actions are typically presumed to be reviewable under the APA. Importantly however, the Supreme Court has established a presumption against judicial review of agency decisions that involve whether to undertake investigative or enforcement actions.3  See Chaney, 470 U.S.

_____

3. In Chaney, the Supreme Court explained its hesitance to review agency decisions not to enforce as such:

> This Court has recognized on several occasions . . . that an agency's
> decision not to prosecute or enforce . . . is a decision generally
> committed to an agency's absolute discretion. This recognition of the
> existence of discretion is attributable in no small part to the general
> unsuitability for judicial review of agency decisions to refuse
> enforcement.
>
> The reasons for this general unsuitability are many. First, an agency
> decision not to enforce often involves a complicated balancing of a
> number of factors which are peculiarly within its expertise. Thus,
> the agency must not only assess whether a violation has occurred,
> but whether agency resources are best spent on this violation or
> another, whether the agency is likely to succeed if it acts, whether
> the particular enforcement action requested bestfits the agency's
> overall policies, and, indeed, whether the agency has enough
> resources to undertake the action at all. An agency generally cannot
> act against each technical violation of the statute it is charged with
> enforcing. The agency is far better equipped than the courts to deal
> with the many variables involved in the proper ordering of its
> priorities.
>
> In addition to these administrative concerns, we note that when an
> agency refuses to act it generally does not exercise its coercive

power over an individual's liberty or property rights, and thus does not infringe upon areas that courts often are called upon to protect.

. . . Finally, we recognize that an agency's refusal to institute

5

at 838, 105 S. Ct. at 1659. Noting that "an agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise," the Court stated that "[t]he agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities." Id. at 831-32, 105 S. Ct. at 1655-56. This presumption of enforcement decision unreviewability may be rebutted, however, "where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers." Id. at 832-33, 105 S. Ct. at 1656. Thus, we may review HUD's enforcement decisions only if Congress has granted us power to review by providing us with guidelines or "law to apply."

A. Section 504

In June 1988, under section 504 of the Rehabilitation Act,4 HUD issued regulations addressing the accessibility of multi-family housing projects built or substantially altered with federal financial assistance. ADAPT's argument revolves around HUD's alleged failure to investigate and enforce violations of one of these regulations – 24 C.F.R. S 8.22. This regulation directs that, in addition to accessible buildings and common areas, 5% (but not less than 1) of the units in each covered building must be accessible and adaptable to individuals with mobility impairments. In

_____

> proceedings shares to some extent the characteristics of the decision
> of a prosecutor in the Executive Branch not to indict--a decision which has long been regarded as the special province of the Executive Branch, inasmuch as it is the Executive who is charged by the Constitution to "take Care that the Laws be faithfully executed."

Chaney, 470 U.S. at 831-32, 105 S. Ct. at 1655-56.

4. Section 504 provides "No otherwise qualified handicapped individual . . . shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency." 29 U.S.C. S 794.

6

addition, 2% (but not less than 1) of the units must be accessible to hearing and vision impaired individuals.5

ADAPT claims that HUD has completely abdicated its responsibility by failing to initiate investigations and enforcement actions to ensure that housing providers that receive federal funding are obeying the 5%-2% requirement. Because this is precisely the type of agency decision that is presumed unreviewable under Chaney, the question before us is whether ADAPT can overcome the Chaney presumption by demonstrating that Congress intended to permit review by providing courts with law to apply.

### 1. Investigation

ADAPT's strongest argument is that HUD's refusal to investigate pursuant to the section 504 regulations is reviewable under the APA. 24 C.F.R. S 8.56(b) states that HUD "shall make a prompt investigation whenever a compliance review, report, complaint or any other information indicates a possible failure to comply with this part." 24 C.F.R. S 8.56(b) (emphasis added). The 5%-2% mandate is included in the part, and so covered by the regulation. See id. S 8.22. "[S]hall" indicates that a non-discretionary duty to investigate arises when HUD receives information concerning a possible failure to comply.6

The District Court agreed that a mandatory duty was created by section 8.56(b). The court, however, held that "the regulations do[ ] not set forth significant, substantive standards as to the circumstances in which HUD willfind `possible failure to comply.' " Dist. Ct. at 18. In other words, the court found that Congress did not supply the substantive standards to judge the conduct necessary to rebut the Chaney presumption against review. ADAPT argues that the 5%-2% mandate does provide substantive standards, i.e., 5% and 2% of the units must be accessible.

_____

5. The parties and the District Court refer to section 8.22 as the "5%-2%" regulation. For consistency, we will use this term as well.

6. At oral argument, counsel for HUD suggested that "shall" in fact created only a discretionary duty as interpreted by HUD. An agency can not avoid a mandatory duty, however, simply by averring that it interprets clearly mandatory language as discretionary.

7

ADAPT confuses the existence of a standard restricting federal funding recipients with the existence of a standard by which to judge HUD's conduct. In this case, the 5%-2% mandate is not adequate "law to apply" to help us discern guidelines to apply to HUD's enforcement and investigation decisions.

Our opinion in Harmon Cove Condominium Association v. Marsh, 815 F.2d 949 (3d Cir. 1987), is instructive. In Harmon Cove, a condominium association brought an action against the Secretary of the Army to compel the Secretary to enforce a permit issued to the condominium developers. The association claimed that section 404 of the Federal Water Pollution Control Act, which included language similar to section 8.56(b),7 imposed a duty on the Secretary to enforce compliance with the conditions of the permit. See id. at 952. The permit contained explicit terms that bound the recipients, much like the section 504 regulations contain specific terms that bind housing providers that receive federal funding. Despite these explicit terms, we found that the APA did not allow us to review the agency's decision not to enforce the terms of the permit. We stated that "[t]he statute imposes no duty on the Secretary to make a finding of violation, because it contains no guidelines for the Secretary to follow in choosing to initiate enforcement activity." Id.

We rejected the association's argument that it would be "anomalous" to issue a permit and then not enforce the conditions of the permit. This argument mirrors ADAPT's claim that HUD has a duty to ensure that the conditions of the funding grants are followed by housing providers. As we noted in Harmon Cove, "[t]he short answer is that in the

_____

7. The relevant portion of section 404 provided,

> Whenever on the basis of any information available to him the Secretary finds that any person is in violation of any condition or limitation set forth in a permit issued by the Secretary under this section, the Secretary shall issue an order requiring such person to
> comply with such condition or limitation, or the Secretary shall bring a civil action in accordance with paragraph (3) of this subsection.

Harmon Cove, 815 F.2d at 952 (emphasis added).

8

absence of some guidelines binding the [agency's]
enforcement decisions, [we] are bound by the Supreme
Court's ruling that such determinations are left to the
[agency]." Id. at 953.

ADAPT asks us to review whether HUD has
systematically failed to investigate in the face of national
noncompliance with the 5%-2% requirement. Congress has
provided no guidelines, or law to apply, to constrain HUD's
decision to investigate violations of its regulations.
Therefore, we have no choice but to conclude that these
decisions are committed exclusively to agency discretion.8

_____

8. ADAPT asserts that HUD has received complaints about nationwide
noncompliance with the 5%-2% mandate, that HUD officials have
privately acknowledged awareness of noncompliance, but that HUD has
not responded by launching the requisite investigation. ADAPT contends
that HUD has therefore violated 24 C.F.R. S 8.56(b), which, as noted,
provides in pertinent part that HUD "shall make a prompt investigation
whenever a . . . complaint . . . or any other information indicates a
possible failure to comply with [the 5%-2% requirement]." Id. ADAPT
argues that 24 C.F.R. S 8.56(b) is sufficiently specific to permit a court
to review HUD's enforcement program because that regulation imposes
upon HUD an inflexible duty to "make an investigation" whenever it
receives any sort of "complaint" or any other sort of "information"
indicating a possible failure to comply with the requirement in question.

We cannot accept this argument. For one thing, HUD has discretion to
interpret its own regulation, and in practice it has not given the
regulation the rigid -- and almost certainly unworkable -- interpretation
that ADAPT advances. Agencies charged with investigative and
enforcement responsibilities receive all sorts of complaints and other
information -- ranging from vague, anonymous tips to hard evidence
from reliable sources -- concerning possible noncompliance with the
laws that they are charged with enforcing. No such agency could
function if it were duty-bound to undertake any sort of extensive
investigation whenever any sort of complaint or information regarding a
possible violation came to its attention. Reasonably read, 24 C.F.R.
S 8.56 obligates HUD to undertake an investigation (of some sort) when
the complaint or information it receives meets some standard of
substantiality, and because this standard is not spelled out in any
statute or regulation, HUD's decisions regarding the initiation of
investigations are, under Chaney, not subject to APA review.

Moreover, the concept of an investigation is itself broad, and we see no
reason why HUD cannot interpret that concept as including the

9

## 2. Enforcement

Review of HUD's decisions whether to bring enforcement actions under the section 504 regulations is governed squarely by Chaney. The regulations promulgated under section 504 make it clear that HUD has discretion whether to bring enforcement actions in specific cases. See 24 C.F.R. S 8.55(b) (HUD "may" require compliance reports from funding recipients "at such times, and in such form and containing such information, as the responsible civil rights official or his or her designee may determine to be necessary to enable him or her to ascertain whether the recipient has complied or is complying"); id. S 8.56(a) (HUD "may periodically review the practices of recipients to determine whether they are complying with this part and where he or she has a reasonable bases to do so may conduct on-site reviews"); id. S 8.57 (If actual or threatened non-compliance is found, HUD "may" refer the case to the Department of Justice for legal action or initiate proceedings for debarment or termination of federal funding).

The same concerns that persuaded the Supreme Court to conclude the agency enforcement actions presumptively unreviewable in Chaney are here too. HUD is charged with monitoring and enforcing a broad array of housing anti-discrimination regulations. HUD must balance a number of factors, including, inter alia, expense, personnel resources, and likelihood of success. Compared to the courts, HUD is far more aware of its policies and priorities, and it should have the discretion to balance them. Finally, Congress has

_____

Department's internal consideration of the information that it receives in light of all that it knows about the housing field, its enforcement strategies, and its resources. If a court were to review whether HUD complied with 24 C.F.R. S 8.56 upon the receipt of a particular complaint or some other bit of "other information" indicating possible noncompliance, the court would have to determine whether this sort of purely internal inquiry was sufficient under the circumstances, and no statute or regulation that has been called to our attention provides a standard that the court could apply in making that determination. Thus, for this additional reason, we conclude that ADAPT's claim is not cognizable under the APA.

10

not provided any standards to limit HUD's discretion under the section 504 regulations so as to rebut the presumption of unreviewability, therefore, HUD's general investigative and enforcement policies are not reviewable under S 701(a)(2).

## B. FHAA

ADAPT's claims under the FHAA are similar to its claims under section 504. ADAPT, however, claims that 42 U.S.C. S 3608(e)(5), which charges HUD to "administer the programs and activities relating to housing and urban development in a manner affirmatively to further the policies" of the FHA, provides an independent source of law for courts to apply. 42 U.S.C. S 3608(e)(5) (emphasis added).9

### 1. Framework of the FHA

The FHA was enacted to address the problem of discrimination by federally funded housing providers. The FHA is similar to other civil rights laws in that it relies heavily on individual civilian complaints for enforcement. Congress passed the FHAA in 1988 to extend the FHA's protections against discrimination to people with physical disabilities.10 The FHAA provides that all common areas and

_____

9. ADAPT also argues that HUD is required under 42 U.S.C. S 3608(e)(6) to gather and disseminate information regarding compliance or noncompliance with the 5%-2% mandate and with other related matters. See Appellants' Br. at 13-14. However, ADAPT readsS 3608(e)(6) to mean much more than its language says. Under this provision, HUD is required "annually to report to the Congress, and make available to the public, data on the . . . handicap . . . of persons and households who are applicants for, participants in, or beneficiaries of [HUD programs]." In other words, this provision concerns data on any disabilities possessed by those who benefit or seek to benefit from HUD programs; the statute says nothing about data regarding the construction of housing, compliance with the 5%-2% mandate, or any of the other matters about which ADAPT appears to complain. Thus, we see no basis for reviewing ADAPT's data collection and dissemination claim under the APA.

10. The FHAA added disabled persons to the classes of persons protected from both public and private housing discrimination, making it unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter" on the basis of handicap. 42 U.S.C. S 3604(f)(1). Discrimination on the basis of handicap includes failing to incorporate the accessibility and adaptability features specified
in the Act. 42 U.S.C. S 3604(f)(3)(C).

all units on accessible routes (i.e., on floors accessible via building entrances or elevators) be made accessible to individuals with disabilities. These standards apply to all buildings, whether or not they are federally financed, built after March 13, 1991, with four or more housing units. So, the FHAA rejects the set aside approach of the section 504 regulations in favor of broader, more general regulation of newly constructed multi-family housing.

The FHAA requirements may be enforced in four ways. First, persons "aggrieved" by a discriminatory housing practice may file an administrative claim with HUD. HUD then has a mandatory duty to investigate these complaints. If, after investigation, HUD finds a reasonable basis for the complaint, it must bring a charge on behalf of the aggrieved person. See 42 U.S.C. S 3610. Second, an "aggrieved" person may completely bypass the administrative complaint process and file suit directly in federal court against the alleged discriminator. See id. S 3613. Under these two provisions, aggrieved persons can obtain compensatory and punitive damages, injunctive relief, attorneys' fees, and costs.

Third, HUD may bring charges alleging discriminatory practices on its own initiative. See id. S 3610(a)(1)(A)(i). HUD may also initiate investigations to determine whether to bring enforcement complaints. Importantly, all provisions that concern HUD-initiated prosecution and investigation are couched with permissive language under the FHA. See id. (HUD "may also file such a complaint"); id. S 3610(a)(1)(A)(iii) (HUD "may also investigate housing practices to determine whether a complaint should be brought").

Fourth, the Attorney General may sue if she has reasonable cause to believe that a housing provider has been engaged in a pattern or practice of discrimination. See id. S 3614.

   2. Impact of "Affirmatively to Further "

ADAPT argues that the "affirmatively to further" language in the FHA provides a basis for courts to review the investigative and enforcement actions (or, in this case,

12

inaction) of HUD under the FHAA. It claims that section 3608(e)(5) imposes on HUD a duty to investigate and enforce the 5%-2% requirements of Section 504, a duty to gather statistical information on housing discrimination against disabled people, and a duty to take enforcement action to secure compliance with the FHAA.

Were we to accept this argument we would be creating an independent guideline to limit HUD's discretion that would conflict with the plain text of the statute. The language of the FHA clearly mandates HUD investigative and enforcement action in only one instance -- when HUD is presented with an administrative complaint filed by an aggrieved person alleging discrimination. See id. S 3610. Nowhere does ADAPT allege that HUD has failed to act when presented with an administrative complaint of this type. All HUD-initiated investigative and enforcement actions under the FHA are accompanied by clearly discretionary language.

Despite the plain language of the statute, ADAPT claims that the "affirmatively to further" language of the FHA places additional requirements on HUD regarding investigation and enforcement. ADAPT believes that Shannon v. HUD, 436 F.2d 809 (3d Cir. 1970), supports its argument that the "affirmatively to further" language creates a reviewable duty under the APA. In Shannon, we held that HUD had not fulfilled its duties under the Civil Rights Acts when it approved an apartment project in an urban renewal area without considering the socio-economic impact of its decision. See id. at 820-21. We held that to ensure that it was affirmatively furthering integration, HUD had a duty to make an informed decision and gather material information concerning the socio-economic impact of a specific land use. See id. at 822.

Shannon, decided approximately 15 years before the Supreme Court's Chaney decision, does not support the result proposed by ADAPT -- that HUD is required to collect all relevant data and to investigate all possible violations of the FHAA on a national level. In Shannon, we undertook a review of a specific decision by HUD and found that, when making the decision, HUD failed to consider all the relevant factors. See id. at 819. There is no dispute

13

that, much like a prosecutor, once an agency undertakes an enforcement action or makes an affirmative decision, it must proceed fairly and consider the mandates of the governing acts and regulations. In this case, HUD's regulations recognize that data collection is important; however, it has no affirmative duty under any statute or regulation to initiate nationwide investigation and prosecution of all potentially discriminatory housing practices.

ADAPT also relies on the First Circuit Court of Appeals decision in NAACP v. HUD, 817 F.2d 149 (1st Cir. 1987). In NAACP, the court found that the APA allowed review of HUD's grant activity in Boston. The court ruled that, under the section 3608(e)(5) "affirmatively to further" language, when taking action, HUD's duty includes more than the obligation simply not to discriminate itself, the duty extends to using its grant programs affirmatively to assist in ending housing discrimination. See id. at 154-55. In other words, under section 3608(e)(5), when taking specific action, HUD had a duty to encourage, under the facts of NAACP, desegregation of federally funded housing. The court found that the pattern of specific examples of HUD's failure to enforce Title VII requirements justified judicial review.

The court in NAACP held that the section 3608(e)(5) "affirmatively to further" language both created a duty and provided a specific standard by which to evaluate HUD's actions. There is, however, an essential difference between the specific activity reviewed by the court in NAACP and the all-encompassing review we are asked to undertake here. Specifically, in NAACP, the court found that it was able to review HUD's actions under the APA, in part, because the "NAACP aske[ed] for review of a series of decisions to determine, whether, taken together, they violate the obligation to further the goals of Title VIII." Id. at 159 (emphasis added). ADAPT does not point to any specific decision (or decisions) made by HUD that did not further the polices of the FHAA. Rather ADAPT claims that after initial funding decisions have been made and the funding awarded, HUD has not investigated whether funding recipients have continued to follow the HUD requirements.

14

This critical distinction between a focused review of specific agency decisions and broad-based review of general agency policies regarding investigation and enforcement is what distinguishes NAACP and Shannon from this case. Even assuming that once HUD undertakes a discretionary action, and is required affirmatively to further the policies of the FHA and the FHAA, we may review its actions to ensure that it does, this is not such a case.

To reiterate, the Supreme Court held in Chaney that there is a rebuttable presumption that agency decisions not to enforce are unreviewable. Under the FHA, Congress explicitly chose to give discretion to HUD when determining whether to prosecute and investigate. The "affirmatively to further" language cannot override the discretionary impact of the explicit language of the statute.

Even though, in certain cases, the "affirmatively to further" language may furnish the courts with a standard of review, in this case Congress did not provide a substantive standard to apply to constrain HUD's enforcement and investigative decisions. We are not dealing with a challenge to specific HUD conduct; instead, we are faced with a broad-based attack on HUD's investigative and enforcement scheme. The numerous ways that HUD can allocate its resources and choose to affirmatively further the policies of the FHA illustrate the fact that the "affirmatively to further" language does not provide a meaningful substantive standard against which to judge HUD's generalized enforcement activities. The statutory language as well as the general enforcement structure of the FHA illustrate that discretion is given to HUD in all relevant instances. As such, review is precluded by the statute and, therefore, barred under section 701(a)(2) of the APA.11

_____

11. ADAPT argues that the 3608(e)(5) "affirmatively to further" language in the FHA should be construed to require that HUD actively enforce the 5%-2% requirements in its section 504 regulations. The section 504 regulations were promulgated to fulfill HUD's requirements under the Rehabilitation Act, not the FHA. These two acts, while overlapping in some areas, differ in both procedure and focus. See Dist. Ct. at 4 n.4 (District Court explanation).

ADAPT argues that the section 504 regulations were, in fact, enacted to further the basic policy of the FHAA, which is to ensure equal access

15

III.

Even if review were not barred by section 701, section 704 of the APA would provide an independent barrier to review in this case. Section 704 allows judicial review of an agency action only if (1) the statute expressly authorizes it, or (2) the action at issue is a "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. S 704. In this case, ADAPT correctly does not argue that the statute expressly authorizes review of the type it is seeking, so our only question is whether ADAPT can point to afinal HUD action for which no other adequate judicial remedy exists.

Unlike, for example, in NAACP where the plaintiffs pointed to a pattern of specific grant decisions by HUD, in this case, no final agency action exists. ADAPT argues that HUD has completely abdicated enforcement of the FHAA and its regulations under section 504, particularly the 5%-2% mandate. However, it does not point to any HUD action demonstrating this. As the District Court stated,

> [ADAPT] do[es] not claim that HUD has failed to issue regulations required by the FHAA, has issued regulations inconsistent with the statute, or has officially announced that it will not enforce the Act, and do[es] not identify any other agency action or inaction that has legal consequences, such as releasing third parties from their legal duty to comply with the FHAA's accessibility requirements.

Id. at 15 n.17.

ADAPT has neither exhausted, nor even resorted to, any administrative proceedings. As the Supreme Court noted in Chaney, "[w]hen an agency does act to enforce, that action

_____

to housing. While the general intent may be the same, the language of the FHA should not be construed to impute a duty to HUD under the Rehabilitation Act.

However, even if the "affirmatively to further" language in the FHA could be imputed to apply to the section 504 regulations, the result would be the same as above. "Affirmatively to further" also provides no substantive standard against which to judge HUD's general enforcement scheme under the section 504 regulations.

16

itself provides a focus for judicial review, inasmuch as the agency must have exercised its power in some manner. The action at least can be reviewed to determine whether the agency exceeded its statutory powers." 470 U.S. at 832, 105 S. Ct. at 1656. The lack of a final agency action in this case makes evaluation of ADAPT's claims improper because there is no decision on which we can focus.

Not only does ADAPT fail to point to a final agency action, but an adequate judicial remedy also exists. They can pursue their claims of housing discrimination directly against federal-funding recipients, or they may bring administrative claims to HUD and trigger HUD's mandatory duty to investigate. If HUD refused to investigate afiled administrative claim, it could result in a violation of its duty under both the FHAA and the Rehabilitation Act, and trigger review by a court.

The nature and structure of the FHA, together with its legislative history, indicate that the FHA was designed to operate like other civil rights laws. The focus of the APA is on individual actions against specific discriminators, not national enforcement by HUD. Congress has provided sufficient alternative remedies to physically disabled individuals victimized by housing discrimination. As the D.C. Circuit Court of Appeals noted, "[t]o the extent Congress' assessment of alternate remedies is relevant, moreover, [Supreme Court precedent] suggests that Congress considered private suits to end discrimination not merely adequate but in fact the proper means for individuals to enforce Title VI and its sister antidiscrimination statutes." Women's Equity Action League v. Cavazos, 906 F.2d 742, 751 (D.C. Cir. 1990) (emphasis added).

In Women's Equity Action League, the court was considering a broad-based challenge to the Department of Education's alleged failure to enforce various civil rights statutes against educational institutions that received federal funds. The court declined to review the actions under the APA because of the existence of the opportunity for individuals to bring direct actions against discriminators. See id.

17

While noting that direct suits may be "more arduous . . . and less effective" than judicial oversight of government enforcement, "situation-specific litigation affords an adequate, even if imperfect, remedy." Id. at 750. The court went on to state that "an APA suit to compel investigation and fund termination, although available `if no private remedy exists,' `is far more disruptive of [an agency's] efforts efficiently to allocate its enforcement resources . . . than a private suit against the recipient of federal aid.' " Id. (quoting Cannon v. University of Chicago, 441 U.S. 677, 707 n.41, 99 S. Ct. 1946, 1962 n.41 (1979)). In this case, a private right of action against individual housing providers that receive federal funding is provided for in the text of the statute. This remedy is clearly "adequate" in the section 704 sense, and so judicial review is inappropriate on all counts.

ADAPT argues that individual suits are not as effective as a review of HUD's national investigation and enforcement practices. While this may be true, section 704 does not require an equally effective remedy, only an adequate one. In this case, direct actions will be adequate to deter individual discriminators. Any HUD failure to initiate investigation or enforcement activities can be adequately remedied by the filing of individual administrative complaints. Once a complaint is filed, HUD must investigate and, if reasonable grounds are found, enforce the statutory regulations.12

_____

12. The District Court also dismissed ADAPT's claim that HUD directly discriminates in violation of Section 504 of the Rehabilitation Act. ADAPT argued that HUD directly discriminates against individuals with physical disabilities by maintaining unlawfully inaccessible housing in projects administered by the agency itself and by failing to collect data concerning disabled individuals while collecting data on the race and gender of individuals in HUD-financed housing. See Appellants' Brief at 21-28. The District Court found that the claims and ADAPT's standing were not supported by the factual allegations in the record and so he dismissed the claim with leave to amend. See Dist. Ct. Op. at 5 n.5. ADAPT has not amended its complaint.

A review of the complaint reveals that both of ADAPT's claims explicitly stated that the relief was being sought under the APA. See Appendix at 31-36 (Second Amended Complaint). There is no mention of a direct

18

IV.

In this case, ADAPT brought a broad claim challenging HUD's alleged nationwide failure to initiate investigations of housing discrimination against physically disabled individuals and its alleged failure to initiate enforcement of its regulations. Under the APA, this is not the type of claim that is appropriate for judicial review because it attacks a discretionary decision for which Congress has not provided reasonable standards to constrain HUD's actions. In addition, ADAPT has not met the requirement under section 704 that it identify a final agency action for which no other judicial remedy exists. Therefore, we affirm.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit
_____

action against HUD. The District Court did not err when it concluded that ADAPT failed to allege a direct discrimination claim. In addition, ADAPT was granted leave to amend the complaint if it chooses to do so.

It is not clear whether, even if they had properly asserted a direct claim, such a claim would be viable. The First Circuit in NAACP dealt with a similar direct challenge to HUD. The plaintiffs in that case characterized their claim as an "implied right of action" under the FHA. See NAACP, 817 F.2d at 152. The Court declined to allow such an action, finding that Congress provided for review of agency action with the APA and that no special circumstances existed to support the extension of a special private right of action in that case. See id. at 152-54. However, we do not have to decide this aspect because ADAPT did not properly bring the claim before the District Court.

19